**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **JANE DOE,**<br><br>    **PLAINTIFF,**<br><br>**-- against --**<br><br>**NORTHERN LIGHT HEALTH AND TEAMHEALH**<br><br>    **DEFENDANTS.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jane Doe ("Plaintiff"), by and through the undersigned counsel, brings this action against Northern Light Health ("Northern Light"), and TeamHealth (collectively "Defendants") , and in support thereof states as follows:

**I.**    <u>**OVERVIEW**</u>

1.    Northern Light Health ("Northern Light") touts itself as a pillar of the Maine community and the state's most expansive health care system, with ten member hospitals from Portland to Presque Isle and more than 12,000 employees.

2.    On Northern Light's online homepage, the healthcare provider advertises its belief that "people deserve access to care that works for them" and its values of "Integrity, Respect, Compassion and Accountability."

3.    For female employees of Northern Light, these stated values are mere lip service. After Northern Light partnered with TeamHealth—one of the nation's largest medical staffing agencies—in late 2018, women working at the system's hospitals in Ellsworth and Blue Hill were subjected to abuse by the sites' medical director, Dr. B.D. ("Dr. D").

4.     Plaintiff was Dr. D's foremost victim. A lifelong resident of Maine, she was in her late twenties and a new first-time mother when in May 2019 she joined Northern Light as an administrative Practice Coordinator for physicians at Northern Light Maine Coast Hospital ("Maine Coast") in Ellsworth, Maine and Northern Light Blue Hill Hospital ("Blue Hill") in Blue Hill, Maine. Within weeks, Dr. D subjected Plaintiff to inappropriate comments about her appearance and romantic life; by the end of the summer, he had sexually assaulted her in a hospital parking lot after a mandatory "one-on-one" dinner meeting that entailed Plaintiff's first evening away from her infant daughter.

5.     Over the course of 2019 and 2020, Dr. D repeatedly subjected Plaintiff to unwanted sexual contact, including numerous violations in a secluded basement call room at Maine Coast Hospital, during which Dr. D groped Plaintiff's breasts and genitals. On multiple occasions, Dr. D. subjected Plaintiff to after-hours texts and calls of a sexual nature and coerced Plaintiff to send him sexually explicit photos.

6.     In or about August 2019, Dr. D lured Plaintiff to his house—ostensibly to discuss work-related issues—and raped her after coercing her to drink alcohol.

7.     When the abuse began, Plaintiff was 28 years old and a new wife and mother; Dr. D was in his mid-forties and married.

8.     After Plaintiff reported Dr. D's sexual misconduct in February 2020, Defendants retaliated against Plaintiff, with one senior administrator telling Plaintiff "If I were you, I'd pretend like none of this had even happened." Defendants denied Plaintiff's request to work solely from the Blue Hill site in order to avoid further in-person encounters with Dr. D. Instead, Defendants offered Draconian options: quit or work only part-time hours without benefits if Plaintiff refused to work in person with Dr. D.

9.     Although Northern Light began requiring all administrative and non-essential employees to work remotely on March 18, 2020, due to the worldwide Covid-19 Pandemic, Defendants insisted Plaintiff must be on site at all times. Due to the ongoing hostile work environment, Plaintiff was compelled to resign from her position and was constructively discharged on or about April 3, 2020.

10.     As a result of Defendants' actions, Plaintiff was subjected to discrimination, harassment and violence based on her gender. This harassment was both sufficiently severe and pervasive to create a continuing and persistent abusive work environment.

11.     Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Maine Human Rights Act, 5 M.R.S.A. §4551 *et seq.* ("Maine Human Rights Act" or "MHRA"), and Maine common law. Plaintiff seeks damages to redress the injuries she has suffered on the basis of her gender as a result of Defendants' discrimination, sexual harassment and retaliation.

## II.     <u>THE PARTIES</u>

12.     **PLAINTIFF** is a 30-year-old woman. Plaintiff served as "Practice Coordinator" at Northern Light Health from May 2019 to April 2020 at Northern Light Maine Coast Hospital in Ellsworth, Maine and Northern Light Blue Hill Hospital in Blue Hill, Maine.

13.     **DEFENDANT** TEAMHEALTH is one of the largest suppliers of outsourced healthcare professional staffing and administrative services to hospitals and other healthcare providers in the United States. TeamHealth is headquartered at 265 Brookview Centre Way, Suite 400, in Knoxville, Tennessee. TeamHealth hired Plaintiff and paid Plaintiff's wages.

14.     **DEFENDANT** NORTHERN LIGHT HEALTH ("Northern Light") is a healthcare system that operates hospitals and medical centers throughout Maine and is headquartered at 43

Whiting Hill Road in Brewer, Maine. Northern Light's employees, including Dr. D., supervised Plaintiff on a day-to-day basis and set terms and conditions of her employment including but not limited to hours and location of work.

### III.    JURISDICTION AND VENUE

15.    This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 because this action involves claims brought under Title VII.  This Court has supplemental jurisdiction over Plaintiff's claims under the Maine Human Rights Act and Maine common law pursuant to 28 U.S.C. § 1367. Plaintiff has exhausted her administrative remedies under Title VII; the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Right to Sue letter on July 8, 2021. Plaintiff also has exhausted her remedies under the MHRA and will be requesting a right to sue letter from the Maine Human Rights Commission.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f). The unlawful educational and employment practices complained of herein occurred in this District, and the events or omissions giving rise to Plaintiff's claim occurred in this District. Defendant Northern Light is headquartered in this district

### IV.    FACTUAL ALLEGATIONS

**A.  Plaintiff's Work as a Practice Coordinator at Maine Coast and Blue Hill Hospitals**

17.    Plaintiff worked onsite at Northern Light Maine Coast Hospital in Ellsworth ("Maine Coast") and at Northern Light Blue Hill Hospital ("Blue Hill") in Blue Hill but conducted nearly all of her work via telephone and email. As a Practice Coordinator, Plaintiff's role was to assist physicians with administrative tasks related to patient documentation and billing.

18.    Plaintiff was supervised directly by Dr. D., the medical director at Maine Coast and Blue Hill hospitals. Dr. D required Plaintiff to meet with him multiple times per week, including

in the call room at Maine Coast, and required Plaintiff to speak and text with him via telephone after hours. When Plaintiff lodged concerns or complaints to administrators about Dr. D's conduct, she was told to apologize to Dr. D and comport herself to his working style.

19.    Dr. D was unusually under-qualified for this supervisory position as medical director at Northern Light. Upon information and belief, at the time of his appointment Dr. D lacked board certification in any specialty and was serving as *locum tenens* rather than permanent hospital staff.

**B.  Dr. D Exposes Himself to Plaintiff and Sexually Assaults Her**

20.  Within weeks of starting her position, Dr. D subjected Plaintiff to unprofessional treatment. Dr. D repeatedly refused to make time to speak with Plaintiff about work matters and made inappropriate comments, including comments about her appearance and questions about her romantic history and husband. Dr. D frequently texted Plaintiff after business hours and engaged her in personal conversations.

21.    On or about July 19, 2020, at Dr. D's request, Plaintiff attended a one-on-one business dinner with him at the Boatyard Grill restaurant in Blue Hill. The purpose of this dinner ostensibly was to review documentation processes and update protocols at Northern Light. Dr. D claimed he was too busy treating patients to meet with Plaintiff at the hospital during regular business hours.

22.    At Dr. D's insistence, Plaintiff met him at the hospital and then traveled with him to the restaurant in his car, while leaving her car parked in the parking lot at Blue Hill Hospital. After dinner, Dr. D insisted that the pair "celebrate" together, and they drove to Marlintinis, a bar in Blue Hill. After one drink, they returned to the hospital so that Plaintiff could retrieve her car and drive home.

23.     When Plaintiff tried to exit Dr. D's car, he refused to unlock the door despite her repeated requests to be let out of the vehicle. Dr. D then exposed his genitals, grabbed her hand and head, and attempted to physically force her to touch his exposed penis. He also grabbed Plaintiff's breasts and attempted to pull down her pants.

24.     At this time Plaintiff was only four months postpartum,and had breast pads in her bra from nursing. Dr. D repeatedly stated that he had "wanted [her] for a long time." Terrified, Plaintiff defended herself physically and yelled at Dr. D to let her out of the car. Dr. D detained Plaintiff in his vehicle for approximately 30 minutes before making her promise to see him the following day and finally releasing her.

25.     In the weeks following, Dr. D repeatedly pressured Plaintiff for sex. At the end of their work telephone calls, Dr. D started demanding that Plaintiff send him explicit photographs.

26.     During one such call, on or about July 26, 2019, Dr. D pressured Plaintiff by telling her to "send me a picture of you topless." She declined the request. Further, she told Dr. D that she would never send him explicit photographs, as Plaintiff feared she would be blackmailed or threatened, as had occurred during an abusive relationship during her teenage years. She further disclosed that this teenage relationship was also extremely physically abusive. Plaintiff's ex-boyfriend, she told Dr. D, had thrown her out of a moving vehicle and through a glass door. Plaintiff further disclosed to Dr. D that has a result of her abuse, she had severe anxiety that affected her social interactions. She hoped that as a result of her candor, Dr. D would leave her alone.

27.     Despite Plaintiff's disclosures, Dr. D nonetheless continued his harassment. In late July 2019, Dr. D barged in on Plaintiff while she was pumping breast milk for her infant daughter in her private office at Maine Coast hospital. At the time of the incident, Plaintiff's office door

was shut. Her team, including Dr. D, knew that she was pumping. Plaintiff felt extremely violated by this incident and never again felt safe enough to pump at Maine Coast, which was devastating to her as a first-time mother.

28.     On or about August 24, 2019, Dr. D lured Plaintiff to his house at approximately 10 a.m. in the morning by repeatedly begging her to come over, ostensibly to discuss work-related issues. He immediately plied her with alcohol and Plaintiff became intoxicated. Dr. D then commanded that Plaintiff take off her clothes and pressured Plaintiff to have sexual intercourse. Unable to think clearly because of her inebriated condition, Plaintiff reluctantly submitted to Dr. D's demand. Plaintiff felt that she had no choice but to yield to Dr. D's unwanted advances.

29.     Subsequently, Dr. D escalated his harassment, both at work and through electronic media. Dr. D sent Plaintiff many texts outside of working hours about matters that did not concern work. He frequently made sexual requests over text and Snapchat. He demanded that she send him intimate photographs. Reluctantly, Plaintiff sent him photos and hoped that his harassment might stop. But Dr. D became even more lewd and abusive in his messages and requests. For example, on one occasion, Dr. D attempted to pressure Plaintiff to take and send him obscene photographs with a cucumber. He frequently addressed her with derogatory language, including by repeatedly calling her an "idiot."

30.     When Plaintiff did not respond promptly to Dr. D's text messages, he would call her repeatedly on her cell phone. This behavior felt like stalking and was very frightening to Plaintiff. When Plaintiff deleted Dr. D from her friends' lists on social media Apps like Snapchat and Instagram, he confronted her.

31.     At work, Dr. D began demanding that Plaintiff meet him in Maine Coast's call room, a deserted space in the basement without cell phone reception. Dr. D insisted that it would

be a quiet place where they "could talk."  Plaintiff told Dr. D that she thought the call room was a "sketchy" location where she felt uncomfortable, but he still insisted that Plaintiff meet him there.

32.     Given the seclusion of the call room and its lack of cell reception, Plaintiff feared for her physical safety there. Her fears reflected not only the deserted nature of the space, but also Dr. D's expressed fascination with guns. In or about mid-2019, Dr. D commented to Plaintiff that he had guns in case he were ever "threatened" or if anyone wanted to "mess" with him. Prior to each visit to the call room, Plaintiff texted a friend regarding her whereabouts.

33.     When the pair met in the call room, Dr. D would lock the doors; speak inappropriately to Plaintiff about her appearance, dating life, and marriage; and pressure her for sexual activity. Plaintiff repeatedly told Dr. D that she did not want to engage in any sexual activity. On approximately five occasions, Dr. D exposed himself to Plaintiff, touched her breasts and genitals without her consent, and made Plaintiff touch his genitals. During these assaults, Plaintiff felt paralyzed and was unable to move. Dr. D was very aware of Plaintiff's discomfort and made comments such as, "I can sense you're uncomfortable, your heart rate is up."

34.     In total, Plaintiff met with Dr. D in the call room more than twenty times. Her anxiety grew so overwhelming that she began drinking heavily upon arriving home in the afternoon after her usual shift from 6:30 a.m. to 2:30 p.m. Plaintiff lost weight and at one point weighed less than 100 pounds.

### C.  Defendants Ignore and Minimize Plaintiff's Complaint

35.     Although Plaintiff lodged verbal complaints about Dr. D throughout her tenure, her complaints fell on deaf ears. To the contrary, her interactions with administrators reinforced Plaintiff's understanding that as medical director, Dr. D was her direct supervisor and had the power to have her fired from her job.

36.     For example, in or about the fall of 2019, Dr. D blew up at Plaintiff over the phone when she contacted him about missing documentation, and sarcastically yelled at her. However, when administrators—including TeamHealth Medical Director Dr. Kenneth Parsons and Practice Coordinator Amanda Christy—were informed of the incident, they insisted that Plaintiff apologize to Dr. D. No corrective action was taken in response to Dr. D's verbal abuse.

37.     Similarly, Plaintiff sought help from Practice Coordinator Christy in January 2020 after Dr. D repeatedly disrespected her. Ms. Christy failed to intervene in the abuse, and, in fact, requested that Plaintiff apologize to Dr. D. Again, to Plaintiff's knowledge, no corrective action was taken in response to Dr. D's verbal abuse.

38.     In addition to his verbally abusive behavior towards Plaintiff, Dr. D was routinely verbally abusive to other staff members, particularly women. Although Dr. D's abusive behavior was widely known, upon information and belief no corrective action was taken in response to his abuse.

39.     On or about February 20, 2020, Plaintiff submitted a formal written complaint to Northern Light and TeamHealth. In addition to the incidents described in the complaint, Plaintiff verbally disclosed the abuse she had suffered in the call room.

40.     After Plaintiff filed her complaint, Northern Light and TeamHealth undertook a sham "investigation" that lasted approximately three weeks.

41.     During a follow-up meeting regarding her written complaint—held via Zoom— Plaintiff met with leadership from both Northern Light and TeamHealth. Attendees of the meeting included HR Director Noah Lundy and Chief Medical Officer Sheena Whittaker from Northern Light. Attendees from TeamHealth included HR Manager Maria Peguio, Vice President of

Operations Karen Migdelany, Supervisor Amanda Christy and Lisa Sloan, Vice President for Chart Capture Operations.

42.     During this meeting, Northern Light HR Director Noah Lundy stated that Dr. D had admitted to having repeated sexual encounters with Plaintiff during his shifts, but that Dr. D had claimed the encounters were "consensual." In addition, Northern Light Chief Medical Officer ("CMO") Sheena Whittaker stated that she was "aware" of issues brought up in Plaintiff's letter.

43.     Plaintiff was not given an opportunity to respond to Dr. D's assertion that their interactions were "consensual." Beyond interviewing Dr. D, Northern Light and TeamHealth failed to conduct an appropriate investigation into Plaintiff's complaint.

44.     While Northern Light and TeamHealth conducted their investigation, the emerging onslaught of Covid-19 became well apparent. In mid-March 2020, Northern Light hospitals issued official guidance that all non-essential workers—including administrative employees such as Plaintiff—should complete their work from home.

45.     In or about mid-March 2020, Northern Light and TeamHealth concluded their "investigation" into Dr. D's conduct. Plaintiff was informed at that time that Dr. D was being retained as a doctor at Northern Light but would no longer serve as medical director.

**D. Defendants Deny Plaintiff's Request for a Reasonable Accommodation and Instead Retaliate Against Her; the Hostile Work Environment Continues Unabated**

46.     Following the investigation, during a Zoom phone with Plaintiff on or about March 10, TeamHealth Vice President Lisa Sloan, in a brusque, adversarial tone, advised Plaintiff that "if I were you, I'd pretend like none of this had even happened."

47.     In the wake of the investigation, Plaintiff requested reasonable remedial measures that would have allowed her to continue to do her job without being subjected to sexual harassment

Specifically, Plaintiff requested to base her operations out of Blue Hill Hospital and conduct her communications with Dr. D by email and telephone, similar to how Plaintiff generally communicated with other staff members. Indeed, throughout 2019-2020, Dr. D himself had conducted his business with Plaintiff almost entirely by telephone; when Plaintiff saw Dr. D in the hospital, he focused this time on personal interactions and sexual behavior rather than on work matters.

48.     Northern Light and TeamHealth rejected Plaintiff's reasonable request to work from Blue Hill Hospital and did not offer her any alternative remedial measures. To the contrary, Plaintiff was told that her only options were to keep everything as it was and continue to work in person with Dr. D, which was clearly untenable for Plaintiff given the circumstances; forfeit her job entirely; or work part-time a total of two days (16 hours) per week at Blue Hill, along with a pay cut and loss of benefits. In other words, Plaintiff was presented with a draconian choice that would have resulted in a significant change to her employment status.

49.     Although Northern Light Hospital began requiring all administrative and non-essential employees to work remotely on March 18, 2020, due to the Covid-19 pandemic, Plaintiff was denied the opportunity to work remotely, in contrast to her employers' treatment of her colleagues. Northern Light and TeamHealth denied Plaintiff the opportunity to work remotely during the Covid-19 pandemic—a dispensation granted to similarly-situated employees.

50.     At Northern Light, all staff members in administration, clinical informatics, coding and support operations—including Practice Coordinator Supervisor Terri Dessent—were transferred to remote work amid the Pandemic. In contrast, Plaintiff was denied a work-from-home schedule as well as her requested accommodation to work from Blue Hill hospital. Upon

information and belief, after Plaintiff's resignation, the individual or individuals who assumed her job responsibilities worked remotely.

51.     Throughout March 2020, Plaintiff continued to go to work at Blue Hill Hospital and Maine Coast Hospital and was subjected to a hostile work environment.

52.     On or about March 24, 2020, Plaintiff experienced a hostile work environment while she worked at Maine Coast Hospital.

53.     Plaintiff's office at the Maine Coast hospital was located directly next door to the office of Dr. D and shared a wall with his office. As part of his general work pattern, Dr. D entered and exited his office approximately twice per hour to work on patient notes and charts. It was the general practice for staff—including Dr. D—to leave their office doors open to be available to colleagues. However, on March 24, only days after he had been stripped of his title of medical director, Dr. D repeatedly slammed the door shut when he entered his office. At the time, Dr. D was aware that Plaintiff was working in her office next door. Plaintiff experienced dread and anxiety in response to Dr. D's repeated door slamming.

54.     On the same day, Nurse Practitioner Debi Wong spoke with Plaintiff privately outside of the dictation area. She disclosed to Plaintiff that she was aware that Dr. D was no longer medical director and that his anger and frustration were evident to her and other staff members.

55.     After her conversation with NP Wong, Plaintiff went to work downstairs, rather than in her office, because she was filled with dread and anxiety.

56.     On or about March 27, 2020, Plaintiff experienced a hostile work environment while she worked at Maine Coast Hospital.

57.     Similar to his behavior on March 24, throughout the morning of March 27, Dr. D—well aware that Plaintiff was next door—repeatedly slammed the door shut when he entered his office. Plaintiff experienced dread and anxiety in response to Dr. D's repeated door slamming.

58.     Later in the day, in the hallway outside of her office, Plaintiff encountered Physician Assistant Shelly Walls, who reported to Dr. D and worked with him closely. As a courtesy, Plaintiff mentioned to Ms. Walls that students training to be physician's assistants ("PAs") would be visiting the hospital the following week. Ms. Walls responded to Plaintiff disrespectfully and with hostility. She commented that it was not "fair" that Dr. D had to organize the student PAs since he was no longer the medical director of the hospital. The implication was that Plaintiff was at fault for Dr. D's predicament and was an outsider in the department.

59.     While Plaintiff was speaking to PA Walls, Dr. D walked past Plaintiff in the hallway to get to his office. As he passed by, Dr. D came uncomfortably close to Plaintiff's body and invaded her personal space. Dr. D did not ask Plaintiff to step aside nor did he attempt to navigate around her.

60.     As a result of Defendants' ongoing harassment and retaliation of Plaintiff, Plaintiff resigned from her position as Practice Coordinator on or about April 3, 2020.

**E.  Plaintiff Suffers Physical, Emotional, Reputational and Financial Harms**

61.     As a result of the actions of Dr. D and Defendants, Plaintiff suffers and has suffered from physical and psychological injuries, including:

i.     Rape;

ii.     Sexual assault;

iii.     Insomnia and generalized anxiety;

iv.     Substantial weight loss;

v.      Avoidance of places where she may encounter Dr. D;

vi.     Sense of betrayal;

vii.    Strong sense of guilt and shame;

viii.   Extreme difficulty concentrating and inability to read;

ix.     Dissociation after encountering reminders of sexual harassment;

x.      Sexually disturbing and violent nightmares and memories; and

xi.     Feelings of despair and hopelessness.

62.    Plaintiff has suffered significant financial losses and reputational harm, and will incur further financial losses in the future.

## V.      COUNTS

### COUNT I

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED—
GENDER DISCRIMINATION IN TERMS, CONDITIONS, AND PRIVILEGES
42 U.S.C. § 2000e *et seq*.
(Against All Defendants)**

63.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

64.    Plaintiff was a female employee of Defendant TeamHealth.

65.    Dr. D—the medical director of Northern Lights' hospitals—is an employee and agent of Defendant Northern Light.  During all times relevant to this claim, Dr. D functioned in a managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment.

66.    Dr. D participated in the conduct giving rise to this claim.  He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

67.     Defendant Team Health subjected Plaintiff to discrimination based upon her sex in violation of Title VII.

68.     Defendant Northern Light subjected Plaintiff to discrimination based upon her sex in violation of the Title VII.

69.     Defendants have subjected Plaintiff to discrimination in the terms, conditions, or privileges of her employment.   Defendants have treated Plaintiff differently from and less preferably than similarly situated male employees.

70.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

71.     As a result of Defendants' unlawful conduct, Defendants TeamHealth and Northern Light, individually and as joint employers, are liable to Plaintiff for all remedies available for gender discrimination in terms, conditions, and privileges in violation of Title VII, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT II

**VIOLATION OF MAINE HUMAN RIGHTS ACT**
**GENDER DISCRIMINATION IN TERMS, CONDITIONS AND PRIVILEGES**
**5 M.R.S.A. § 4572**
**(Against All Defendants)**

72.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

73.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits,

lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

74.     As a result of Defendants' unlawful conduct, Defendants TeamHealth and Northern Light, individually and as joint employers, are liable to Plaintiff for all remedies available for gender discrimination in terms, conditions, and privileges in violation of Title VII, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT III

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED—
HOSTILE WORK ENVIRONMENT BASED UPON SEX
42 U.S.C. § 2000e *et seq*.
(Against All Defendants)**

75.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

76.     Dr. D subjected Plaintiff to unwelcome sexual conduct, including invasion of personal space, sexual comments, sexual advances coerced sexual conduct, demands for sexually explicit photographs and conversation and sexual assault.

77.     A reasonable person would have considered the conduct to be significant and not trivial or petty.  Plaintiff considered the conduct to be significant and not trivial or petty.

78.      Defendants' discriminatory and harassing practices were sufficiently severe or pervasive to create an environment that is both subjectively and objectively hostile, abusive, and retaliatory, such that a reasonable woman would find this conduct hostile or abusive and Plaintiff in fact did perceive it to be so.

79.     Defendants tolerated, condoned, ratified, and/or engaged in the hostile work and educational environment, or, in the alternative, knew, or should have known, of its existence and

failed to take prompt and effective remedial action.

80.     Defendants created, enabled, and maintained a sexually hostile work environment.

81.     Moreover, in the exercise of reasonable care, Defendants should have known of Dr. D's conduct and failed to exercise reasonable diligence to prevent such conduct.

82.     Defendants lack a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees and agents, and for taking appropriate action against those persons who are found to have engaged in such practices.

83.     Defendants fail to effectively communicate a firm policy against such practices to its employees and agents.

84.     Defendants lack procedures for the supervision of employees and agents specifically directed at the prevention and detection of such practices.

85.     As a result of Defendants' unlawful conduct, Defendants TeamHealth and Northern Light, individually and as joint employers, are liable to Plaintiff for all remedies available for subjecting Plaintiff to a hostile work environment based upon sex in violation of Title VII, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT IV

**VIOLATION OF MAINE HUMAN RIGHTS ACT**
**HOSTILE WORK ENVIRONMENT**
**5 M.R.S.A. § 4572**
**(Against All Defendants)**

86.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

87.     Defendants subjected Plaintiff to a hostile work environment based upon her sex in violation of the Maine Human Rights Act.

88.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

89.     As a result of Defendants' unlawful conduct, Defendants TeamHealth and Northern Light, individually and as joint employers, are liable to Plaintiff for all remedies available for hostile work environment base upon sex in violation of the MHRA, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT V

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED—
RETALIATION
42 U.S.C. § 2000(e) *et seq*.
(Against All Defendants)**

90.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

91.     Plaintiff's complaints about Dr. D's misconduct constituted protected activity as defined by 42 U.S.C. § 2000(e)*et seq*.

92.     In response to her complaints, Defendants took multiple retaliatory actions that harmed Plaintiff and which would dissuade a reasonable worker from making or supporting a charge of discrimination., including but not limited to refusing to allow Plaintiff to work remotely from her home or at Blue Hill hospital and by threatening behavior at work, including repeated door-slamming

93.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future employment opportunities,

humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

94.     As a result of Defendants' unlawful conduct, Defendants TeamHealth and Northern Light, individually and as joint employers, are liable to Plaintiff for all remedies available for retaliation in violation of Title VII, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT VI

**VIOLATION OF MAINE HUMAN RIGHTS ACT**
**RETALIATION**
**5 M.R.S.A. § 4572**
**(Against All Defendants)**

95.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

96.     Plaintiff's complaints constituted protected activity under the Maine Human Rights Act.

97.     In response to her complaints, Defendants took multiple retaliatory actions that harmed Plaintiff and which would dissuade a reasonable worker from making or supporting a charge of discrimination.

98.     As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

99.     As a result of Defendants' unlawful conduct, Defendants TeamHealth and Northern Light, individually and as joint employers, are liable to Plaintiff for all remedies available for

retaliation in violation of the MHRA, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

### COUNT VII

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED—
CONSTRUCTIVE DISCHARGE
42 U.S.C. § 2000(e) *et seq*.
(Against All Defendants)**

100.   Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

101.   A reasonable person in Plaintiff's position would have found this work environment intolerable, hostile, and degrading. Plaintiff did in fact find this work environment intolerable hostile and degrading.

102.   A reasonable person in Plaintiff's position would have felt compelled to resign; and Plaintiff was in fact forced to resign from her position as a result of Defendant's sexual harassment and retaliation.

103.   As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

As a result of Defendants' unlawful conduct, Defendants TeamHealth and Northern Light, individually and as joint employers, are liable to Plaintiff for all remedies available for constructive discharge in violation of Title VII, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT VIII

**VIOLATION OF MAINE HUMAN RIGHTS ACT**
**CONSTRUCTIVE DISCHARGE**
**5 M.R.S.A. § 4572**
**(Against All Defendants)**

104.     Plaintiff re-alleges and incorporates by reference each and every allegation in this

Complaint as though fully set forth herein.

105.     Defendants constructively discharged Plaintiff from her employment, in violation

of the Maine Human Rights Act.

106.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with

reckless disregard for Plaintiff's rights.

107.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has

suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits,

lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional

and physical distress, mental anguish, and other economic damages and non-economic damages.

108.     As a result of Defendants' unlawful conduct, Defendants TeamHealth and Northern

Light, individually and as joint employers, are liable to Plaintiff for all remedies available for

constructive discharge in violation of the MHRA, including back pay, front pay, compensatory

damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT IX

**NEGLIGENT HIRING, TRAINING AND SUPERVISION**
**(Against Defendant Northern Light)**

109.     Plaintiff re-alleges and incorporates by reference each and every allegation in this

Complaint as though fully set forth herein.

110.    Northern Light owed a duty of care to Plaintiff and knew, or in the exercise of reasonable care should have known, that Dr. D was not fit for a position in which he would be working with and supervising young, female workers.

111.    Defendant Northern Light hired, failed to supervise, and retained Dr. D.

112.    Defendant Northern Light knew or had reason to know of Dr. D's inappropriate behavior, including his harassment of female employees, but took no steps to appropriately investigate or prevent Dr. D's misconduct.

113.    Defendant Northern Light breached its duty of care to Plaintiff in the training, supervision, and retention of Dr. D.

114.    As a direct and proximate result of Defendant Northern Light's breach of its duty, Plaintiff was subjected to sexual harassment and retaliation by Dr. D.

115.    As a result of Defendant Northern Light's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

116.    Plaintiff suffered damages and injuries for which Defendant Northern Light is liable under state law.

## PRAYER FOR RELIEF ON CLAIMS

WHEREFORE, Plaintiff prays that this Court:

A.    Award Plaintiff all of her damages under the Maine Human Rights Act, Title VII of the Civil Rights Act of 1964, as amended, and common law, including back pay, front pay, compensatory damages, and punitive damages in an amount to be determined at trial.

B.    Award Plaintiff all attorneys' fees, costs, and expenses available under law;

C.      Award Plaintiff all pre-judgment interest and post-judgment interest available under law; and

D.      Award Plaintiff such additional and further relief as this Court may deem just and proper.

**VI.     <u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues triable of right by jury.

Dated:  October 5, 2021                     Respectfully submitted,


<u>s/ Jeffrey Neil Young</u>
Jeffrey Neil Young
**Solidarity Law**
9 Longmeadow Drive
Cumberland Foreside, ME 04110
Telephone: (207) 844-4243
jyoung@solidarity.law

<u>/s/ Jennifer Siegel</u>
Jennifer  Siegel
**Jennifer Siegel Law**
250 Greenway Rd.
Ridgewood, NJ 07450
Telephone: (201) 723-5983
**jennifer@siegellaw.org**


*Attorneys for Plaintiff*